**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| THE REDEEMED CHRISTIAN CHURCH OF GOD and JOEL ONYEMA UZOMA, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-13-2170 |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, | § § § | |
| Defendant. | § § | |

**MEMORANDUM AND OPINION**

The Redeemed Christian Church of God and Joel Onyema Uzoma challenge the denial of an I-360 Petition that the Redeemed Christian Church filed on Uzoma's behalf. They also challenge the denial of their motion to reopen the case. The defendant, the United States Citizenship and Immigration Services ("USCIS"), moved for summary judgment. (Docket Entry No. 50). The plaintiffs responded and cross-moved for summary judgment, and the USCIS responded. (Docket Entry Nos. 52, 53).

Based on the pleadings, the motions and responses, the record, and the applicable law, the court dismisses Uzoma's claims for lack of standing, denies the USCIS's motion for summary judgment, and grants the Redeemed Christian Church's motion for summary judgment in part. The case is remanded to the USCIS for further investigation and explanation of the evidence the Redeemed Christian Church submitted in the agency proceedings, including in the motion to reopen, so that the USCIS may consider all the evidence submitted, including the testimonial evidence, make credibility and reliability decisions, and make the appropriate rulings on the relief sought.

1

The reasons for this ruling are explained below.

## I.    Background

### A.    I-360 Petitions

To obtain an immigrant religious-worker visa, the worker's employer must file a Form I-360. 8 C.F.R. § 204.5(m).  An I-360 immigrant visa is a "special immigrant religious worker" visa available to ministers and other religious workers operating in either a professional or nonprofessional capacity in a religious vocation or occupation, as defined in 8 U.S.C. § 1101(a)(27)(C).  *See also* 8 C.F.R. § 204.5(m)(2).

The I-360 Petition the Church filed on Uzoma's behalf invokes 8 U.S.C. § 1101(a)(27)(C), which defines "special immigrant" as follows:

> (27)    The term "special immigrant" means—
> . . .
> (C)     an immigrant, and the immigrant's spouse and children if accompanying or following to join the immigrant, who
> . . .
> (ii)    seeks to enter the United States—
> (I)     solely for the purpose of carrying on the vocation of a minister of that religious denomination,
> (II)    before September 30, 2015, in order to work for the organization at the request of the organization in a professional capacity in a religious vocation or occupation, or
> (III)   before September 30, 2015, in order to work for the organization (or for a bona fide organization which is affiliated with the religious denomination and is exempt from taxation as an organization described in section 501(c)(3) of Title 26) at the request of the organization in a religious vocation or occupation[.]

2

8 U.S.C. § 1101(a)(27)(C)(ii).

The visa process for a special-immigrant worker begins when a religious organization files an I-360 Petition on the intended religious worker's behalf. The USCIS reviews the Petition. If the Petition is approved, the beneficiary may apply for a visa either from abroad or, if already in the United States, for adjustment of status to that of lawful permanent resident. *Id.*

The regulations under the INA specify the information the religious employer must provide in its I-360 Petition to show the alien's eligibility for classification as a special immigrant religious worker. 8 C.F.R. § 204.5(a), (m). The following requirements apply:

> ®   Religious workers. This paragraph governs classification of an alien as a special immigrant religious worker as defined in section 101(a)(27)(C) of the Act and under section 203(b)(4) of the Act. To be eligible for classification as a special immigrant religious worker, the alien (either abroad or in the United States) must:
>
> (1)   For at least the two years immediately preceding the filing of the petition have been a member of a religious denomination that has a bona fide non-profit religious organization in the United States.
>
> (2)   Be coming to the United States to work in a full time (average of at least 35 hours per week) compensated position in one of the following occupations as they are defined in paragraph (m)(5) of this section:
>
> > (i)    Solely in the vocation of a minister of that religious denomination;
> >
> > (ii)   A religious vocation either in a professional or nonprofessional capacity; or
> >
> > (iii)  A religious occupation either in a professional or nonprofessional capacity.
>
> (3)   Be coming to work for a bona fide non-profit religious organization in the United States, or a bona fide organization which is affiliated with the religious denomination in the United States.
>
> (4)   Have been working in one of the positions described in paragraph (m)(2) of this section, either abroad or in lawful immigration status in the United States, and

> after the age of 14 years continuously for at least the
> two-year period immediately preceding the filing of
> the petition.

8 C.F.R. § 204.5(m).

The "petitioning organization"—the religious employer—must certify in the petition that it is a "bona fide non-profit religious organization" or affiliate; that "the alien has worked as a religious worker for the two years immediately preceding the filing of the application and is otherwise qualified for the position offered"; and that "the alien has been a member of the denomination for at least two years immediately preceding the filing of the application." 8 C.F.R. § 204.5(m)(7). The employer must also certify that "the alien will not engage in secular employment." *Id.* The employer must file evidence showing that it is a religious denomination or affiliated with one and that the employee is religiously qualified. The employer must also file evidence of the religious employee's compensation and prior employment. *See* 8 C.F.R. § 204.5(m)(8)–(12).

A religious-entity employer may obtain an R-1 nonimmigrant visa for a religious worker to come to the United States temporarily. While the religious worker is in the United States, the employer may file an I-360 Petition seeking a special immigrant visa on the worker's behalf. If granted, the visa provides the basis for the worker to obtain an adjustment of status to lawful permanent resident. That is what the Redeemed Christian Church unsuccessfully tried to do for Uzoma here.

The Redeemed Christian Church is a religious entity incorporated in Texas in December 2003. It obtained tax-exempt status under § 501(c)(3) of the Internal Revenue Code in June 2004. The Redeemed Christian Church filed an I-129 Petition to have Joel Uzoma, a Nigerian citizen,

admitted into the United States as a nonimmigrant religious worker. Uzoma entered the United States on October 14, 2003 as a nonimmigrant visitor. (Certified Administrative Record ("CAR") 118, 719). Uzoma's wife and son had entered seven days earlier, also as nonimmigrant visitors. (*Id.*).

In November 2003, the USCIS approved the I-129 Petition for Uzoma and related Petitions for Uzoma's wife and son. (CAR 118–19, 719). Their admission statuses expired in November 2006. (CAR 719, 747). The Redeemed Christian Church then filed an I-360 Petition on Uzoma's behalf in April 2006, seeking to have him classified as a special immigrant religious worker. (CAR 719, 721). The Petition listed Uzoma's wife and son as derivative beneficiaries. (*Id.*). The Redeemed Christian Church included evidence about its tax-exempt status, Uzoma's qualifications and experience, his role at the Church, and his financial status. (CAR 723–963).

In December 2006, the USCIS sent the Redeemed Christian Church a Request for Evidence. The Request sought information verifying that the Redeemed Christian Church qualified as a nonprofit organization, that it had a connection with Uzoma, and that it was able to pay Uzoma until he obtained lawful permanent residence. (CAR 520–23). The Request also asked the Church to provide evidence about Uzoma's experience as a religious worker, the requirements of his position, his work history from 2004 to 2006, the amounts the Church had paid him, and how Uzoma supported himself and his family. (*Id.*). Finally, the Request asked for Uzoma's tax returns for 2004 to 2006, his W-2s, his recent pay stubs, information documenting his immigration status, the letter offering him employment, and a detailed description of Uzoma's work responsibilities at the Church. (*Id.*).

The Redeemed Christian Church responded to this Request for Evidence in February 2007.

The Church provided information on Uzoma's duties as Pastor-in-Charge of the Redeemed Christian Church's Dayspring Chapel.  The Church stated that Uzoma had "no supplementary job."  (CAR at 574–75, 673).  The Church also provided information on Uzoma's immigration status, his qualifications to be the Pastor-in-Charge, his tax returns and pay stubs, and the Church's 2004 financial statement.  (CAR 526–43, 578–79, 591–703, 711–12).  The Church told the USCIS that it would pay Uzoma $1,800 per month to start, then $2,000 per month.  (CAR 702–03).

The USCIS sent the Redeemed Christian Church a Second Request for Evidence on May 1, 2007.  (CAR at 453–55).  The Second Request asked the Church to explain discrepancies between the salary it said it had paid Uzoma and the salary he had declared on his 2004 and 2005 tax returns.  (*Id.*).  The Second Request also asked the Church to explain how Uzoma was supporting himself and his family given the limited income he reported on those tax returns.  (*Id.*).  The Second Request sought additional information on Uzoma's duties, his finances, his salary and other allowances, and his authorization to perform religious duties.  (*Id.*).

The Redeemed Christian Church responded to this Second Request for Evidence on May 25, 2007.  The Church explained the discrepancies in Uzoma's salary on the basis that (1) it included a housing allowance; (2) there were errors in Uzoma's reported wage for 2005 and he was in fact paid $22,424.00 that year rather than the $2,400 per month the Church had reported; (3) the Church also paid for the Uzoma family's medical expenses; and (4) Uzoma received "love gifts" from individual Church members.  (CAR 440, 443).  The Church included additional evidence about its own and Uzoma's finances.  (CAR 445–52, 461–76, 484–89).  The Church repeated its earlier statements that Uzoma "neither had any supplementary job anywhere nor solicited any. . . . [Uzoma] never worked anywhere else in the United States and this is a true statement."  (CAR 440).

6

On July 20, 2008, the USCIS conducted a site inspection of the Dayspring Chapel.  (CAR 436).  During the visit, Uzoma claimed that he was paid $2,400 per month, including a housing allowance, and said that neither he nor his wife had any other employment.  (CAR 436–37).  A man identifying himself as a Church representative arrived wearing an EMT uniform with the logo of a company located in the same office building as the Dayspring Chapel.  In its site-inspection report, the USCIS stated that it was unable to determine whether this man was actually a Redeemed Christian Church representative or an employee of the other company.  (*Id.*).

On October 7, 2008, the USCIS issued a Notice of Intent to Deny the I-360 Petition.  (CAR 289–94, 434–39).  The USCIS stated that a public-records search revealed that both Uzoma and his wife were engaged in unauthorized employment.  The USCIS stated that it had discovered that Uzoma owned a business called Heph Technology Services and his wife owned Cute Apparel.  Both businesses had an address in the same office building as the Dayspring Chapel.  (CAR 437).  The USCIS also reported problems with the site inspection and that it was unclear that Uzoma could support his family.  The USCIS told the Redeemed Christian Church that it needed to provide additional evidence, including Uzoma's W-2 forms, the Church's quarterly wage reports listing Uzoma as a paid employee, and an itemized record from the Social Security Administration showing whether Uzoma had sought outside employment.  (*Id.*).

The Redeemed Christian Church responded to the USCIS request on October 30, 2008, providing all of the documents requested and explaining the deficiencies the USCIS had raised after the site visit.  (CAR 295–433).  The Church stated again that Uzoma did not have any outside employment.  The Church explained that Uzoma had created Heph Technology Services in July 2007 for the sole purpose of buying computers to send to a friend in Nigeria.  (CAR 299–300).  The

Church explained that Uzoma needed a business name to purchase the 16 computers his friend wanted and to enable the Nigerian bank to send the money to pay for the computers back to the United States. (CAR 300–01). The Church informed the USCIS that Uzoma "sincerely did not see it as a violation of status in any way; neither did he have any intention to violate his status," and explained that Uzoma did not know that registering a business name to buy computers for a friend in Nigeria would violate his status. (CAR 301). The Church stated that when Uzoma realized the risk, he "ceased from any such transaction" with Heph Technology Services. (*Id.*). The Church attached Uzoma's Social Security record, which did not list any employers besides the Redeemed Christian Church. The record did, however, show that Uzoma had self-employment earnings from 2004 to 2007. (CAR 309–10).

The Redeemed Christian Church also informed the USCIS that Uzoma's wife was a fashion merchandising student at Houston Community College, and that "[s]he established the clothing place primarily as a practical center for herself in order to intensely practice what she is currently studying in College." (*Id.*). The Church claimed that Uzoma's wife did not intend to violate her status and did not believe that the clothing business she registered was a violation.

The USCIS denied the I-360 Petition on February 25, 2009. (CAR 286–88). The USCIS cited the Social Security record showing that Uzoma received self-employment income for tax years 2004 to 2007, and denied the Petition because "without a Schedule C or other supportive documentation, USCIS cannot determine how this income was derived." (CAR 287).

In March 2009, the Redeemed Christian Church appealed the denial to the Administrative Appeals Office ("AAO"). (CAR 155–282). The Church claimed that it had made no misrepresentations and had demonstrated Uzoma's eligibility for special immigrant religious-worker

status. The Church argued that Uzoma's involvement with Heph Technology Services "was an error in [Uzoma's] judgment which occurred through the wrong advice of a member attorney." (CAR 117). The Church explained that "[s]ometimes [sic] last year," after a Nigerian friend asked Uzoma to purchase computers and send them to Nigeria, Uzoma asked a congregant who was an attorney for advice. The attorney advised Uzoma "to register a company in his name to make it authentic," which he did. The Church stated that Uzoma "did no[t] intend to conduct a business" and had withdrawn his name from the business's registration once he learned that it might violate his immigration status. (*Id.*).

The Redeemed Christian Church also addressed the self-employment income shown on Uzoma's records. The Church explained that the amounts were not from outside employment but instead were from the housing allowance Uzoma received from the Church. (CAR 214–15). The Church attached a letter from its accountant stating that the self-employment earnings were actually for housing. (CAR 180–82, 191).

On January 7, 2010, the AAO remanded the I-360 Petition to the USCIS for further action and consideration. (CAR 147–54). The AAO found that one of the statutory sections the USCIS relied on in denying the Petition simply did not apply. (CAR 152). The AAO also rejected the USCIS's reliance on Uzoma's self-reported self-employment income, finding that the reported amounts represented Uzoma's housing allowance. (CAR 153). But the AAO found that the I-360 Petition could not be approved unless certain issues were resolved in the Redeemed Christian Church's favor.

The AAO stated that it was unclear whether Uzoma entered the United States "solely for the purpose of carrying on the vocation of a minister," as required by 8 U.S.C. § 1101(a)(27)(C)(ii)(I),

9

and that Uzoma's registration of Heph Technology Services raised questions.  (CAR 153–54).  The AAO noted that the Church had not submitted evidence supporting its claims about the circumstances of the business's registration and that the claims were not self-evident.  The AAO explained:

> For instance, it is not clear why [Uzoma] could not order computers under his own name, and therefore had to create 'a business name.'  With respect to the assertion that Heph Technology Services was never a business venture for [Uzoma], the director must provide [the Redeemed Christian Church] an opportunity to submit first-hand documentation (such as invoices and bank documents) to show how much the beneficiary spent to order and ship the computers, and how much he received from his unidentified "friend in Nigeria."  If he received anything beyond his own expenses in purchasing and shipping the computers, [it] would be very difficult to consider the surplus as anything other than business income.  Because it is established and uncontested that [Uzoma] registered a business name under which he purchased and shipped computers, [the Redeemed Christian Church] must submit documentary evidence that will persuasively establish that Heph Technology Services was not, and was never intended to be, a profit-generating enterprise.  *Testimonial claims by the petitioner, the beneficiary, and/or the 'friend in Nigeria' cannot and will not suffice.*

(CAR 153–54) (emphasis added).

The USCIS issued a new Notice of Intent to Deny on August 17, 2010, noting that Heph Technology Services, Unicorn Billing Services, and Cute Apparel were registered to Uzoma or his wife and had business addresses in the same office building as the Dayspring Chapel.  (CAR 142–46).  The USCIS followed the AAO in instructing the Redeemed Christian Church that it needed to "submit documentary evidence that will persuasively establish that Heph Technology Services was not, and was never intended to be, a for-profit enterprise.  Testimonial claims by [the Redeemed Christian Church], [Uzoma,] and/or the 'friend in Nigeria' cannot and will not suffice."  (CAR 146).

10

The Redeemed Christian Church responded in September 2010.  (CAR 105–41).  The Church claimed that Uzoma's friend in Nigeria, now identified as Emeka Okoronkwo, had asked Uzoma to purchase and send him the computers.  Okoronkwo would reimburse Uzoma for the cost.  Uzoma initially declined because he was not familiar with the export process.  (CAR 110).  Uzoma then discussed the request with a lawyer who was a member of the congregation.  The lawyer, identified as John Sekumade, told Uzoma that he would have to register a business name because Dell would not sell more than five computers at once to an individual, but only to a business.  (*Id.*).  The Church asserted that it was Sekumade, not Uzoma, who registered Heph Technology Services in his own name and in Uzoma's name, paid for the computers, and received them at his law office.  The law office was located in the same office building as the Dayspring Chapel.  (*Id.*).  The computers were shipped to Okoronkwo in Nigeria.  United States Customs officials seized the computers because there was no commercial invoice.  (*Id.*).  The Church informed the USCIS that Heph Technology Services then created a commercial invoice, which "included all the other expenses to be incurred in addition to the purchase price, fine paid to US Customs, cost of shipping and custom payments and unforeseen domestic expenses in Nigeria."  (CAR 111).  The delay and the fine, and the shipping and handling fees, meant that Okoronkwo, Uzoma's friend in Nigeria, "sold the computers at a loss."  As a result, Okoronkwo "remitted [a] sales amount which was less than the cost."  (*Id.*).  The Church asserted that when Uzoma learned that the transaction might violate his immigration status, he withdrew his name from the business registration and did not use it again.  (*Id.*).

The Church sent the USCIS documents with its response.  Receipts from Dell showed that the computers cost $31,285.56 and were shipped to Uzoma at Heph Technology Services.  The

shipping address was in the same office building as the Dayspring Chapel.  (CAR 125).  Nigerian wire-transfer requests and bank statements showed that Caller's Spring Nigeria Ltd., Okoronkwo's company, sent Heph Technology Services $28,847.75.  (CAR 127–33).  A document from Heph Technology Services entitled "Commercial Invoice No A0001" listed the total sales price as $42,000.00, inclusive of "Shipping & Handling to Lagos."  (CAR 137).

The Church also sent the USCIS testimonial evidence.  The Church submitted an affidavit from Sekumade stating that he and Uzoma had registered Heph Technology Services, but Sekumade was the only one who paid for the Dell computers.  Sekumade testified that the computers were sold at a loss and that Uzoma did not get any of the money.  (CAR 134).  The Church also submitted an affidavit from Okoronkwo stating that he first asked Uzoma to buy the computers in 2007, that Uzoma contacted a lawyer friend in Houston to provide the money, and that Okoronkwo sold the computers at a loss.  (CAR 136).

On October 5, 2010, the USCIS again denied the I-360 Petition and certified the case to the AAO for review.  (CAR 102–04).  The USCIS explained that the Redeemed Christian Church "has not been forthright in the evidence submitted."  (CAR 103–04).  Although the Church had provided information about the operations of Heph Technology Services in 2007 and 2008, Harris County records showed that Uzoma also registered the business name in 2004 and 2005.  Additionally, the USCIS stated that the $42,000 commercial invoice from Heph Technology Services showed that Uzoma had engaged in secular commercial activity because the invoiced amount was higher than the purchase price from Dell.  The USCIS concluded that "the intent of the transaction, as evidenced by the billing statement, was to obtain a profit."  (*Id.*).  The USCIS stated that the Uzomas' involvement with Cute Apparel and Unicorn Billing Services raised further suspicions about

Uzoma's secular employment and suggested that he did not come to the United States to work solely as a minister. (*Id.*).

In response to the Notice of Certification, the Redeemed Christian Church informed the USCIS that Uzoma had forgotten about his involvement with Heph Technology Services in 2004. The Church clarified that Okoronkwo had first asked for Uzoma's help buying computers in 2004, that Uzoma had initially agreed but then backed out after learning that the shipping process was not "straightforward" and that there was a "misunderstanding" about who would pay for the computers. (CAR 83). The Church also stated that Cute Apparel and Unicorn Billing Services were not "real" businesses but merely names Uzoma's wife registered in anticipation of obtaining authorization to work. (CAR 84). The Church insisted that neither Cute Apparel nor Unicorn Billing Services was ever active, but inconsistently stated that Cute Apparel had rented an office in the same office building as the Dayspring Chapel. The rental stopped when Uzoma's wife could no longer afford to pay the rent. (CAR 84–85).

In September 2012, the AAO denied the I-360 Petition after determining that Uzoma's secular business activities meant that the Church had not met its burden of showing that he was working only as a minister. (CAR 79). The AAO noted that the fact that Heph Technology Services ended up losing money on the computer sale did not show that Uzoma lacked intent to make a profit when he bought and sold the computers. (CAR 80–81). The AAO explained that the Redeemed Christian Church had not submitted statements from Uzoma or his wife explaining their activities. (*Id.*).

The Redeemed Christian Church filed a motion to reopen on October 30, 2012. (CAR 7–76). The Church stated that Uzoma did not forget that Heph Technology Services was registered in 2004

and 2005, but that he had mistakenly registered it without realizing that it would violate that his immigration status and had used the business only once, in 2007. (CAR 12). The Church also stated that Uzoma and his wife did not intend to conduct business activities. (CAR 12–13). The Church submitted a statement from Uzoma with its motion and other documents. (CAR 16–19). Uzoma's statement corroborated the Church's earlier accounts. Uzoma stated that Okoronkwo first contacted him about a computer purchase in 2004. After Uzoma learned that Okoronkwo could not pay for the computers, Uzoma cancelled the plan and withdrew the name Heph Technology Services. (*Id.*). Uzoma said that he forgot about the registration until Okoronkwo contacted him again in 2007. (*Id.*).

The Church also included a statement from Uzoma's wife. She said that Uzoma was not involved in Cute Apparel but had lent his name to register it as a courtesy to her. (CAR 20). She did not know that registering Cute Apparel and leasing office space for it would violate her immigration status, and she stopped on learning that it was considered a violation. (*Id.*). The Church also submitted bank statements from Heph Technology Services; tax returns for Uzoma and his wife, amended to show no self-employment income; and documents showing that in 2008, Uzoma and his wife had withdrawn the three business names. (CAR 21–75).

In May 2013, the AAO denied the motion to reopen the case. The AAO considered the Redeemed Christian Church's motion as a request both to reopen and to reconsider, and declined both, finding that: (1) the Church had failed to provide meaningful documentary evidence showing that Uzoma came to the United States solely to work as a minister; and (2) the testimonial evidence the Church provided to show that Uzoma did not intend to profit from the three businesses he registered did not suffice to meet the Church's burden. (CAR 4–5). The AAO also noted that the

14

evidence the Church submitted with the motion to reopen, including the testimonial evidence from Uzoma and his wife, was previously available and could have been provided earlier.  (CAR 1–6).

The Redeemed Christian Church and Uzoma then filed this suit, challenging the denial of the Petition and the denial of the motion to reopen.  The record is the evidence submitted to the USCIS and the AAO.

### III.   Uzoma's Standing to Challenge the Denial of His I-360 Petition

#### A.   The Applicable Legal Standard

The government moves to dismiss Uzoma's challenge to the denial of his I-360 Petition for lack of standing as a visa beneficiary.  "Article III standing requires [1] an injury-in-fact [2] caused by a defendant's challenged conduct that is [3] redressable by a court."  *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "Subject matter jurisdiction includes the 'irreducible constitutional minimum of standing.'"  *Sullo & Bobbitt P.L.L.C. v. Abbott*, 536 F. App'x 473, 475 (5th Cir. 2013) (unpublished) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  And "a person suing under the A[dministrative] P[rocedure] A[ct] must satisfy not only Article III's standing requirements but an additional test:  The interest he asserts must be 'arguably within the zone of interests to be protected or regulated by the statute' that he says was violated."  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, — U.S. — , 132 S. Ct. 2199, 2210 (2012) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp.*, 397 U.S. 150, 153 (1970)).  The prudential-standing test "'is not meant to be especially demanding.'"  *Id.* (quoting *Clarke Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)).  The Supreme Court has "conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff."  *Id.*  "The test forecloses suit only when a plaintiff's

15

interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* (quotation omitted).

The federal regulations implementing the INA define an "affected party" as "the person or entity with legal standing in a proceeding. It does not include the beneficiary of a visa petition." 8 C.F.R. § 103.3(a)(1)(iii)(B). The government argues that this regulation strips a visa beneficiary like Uzoma of standing to sue the USCIS to challenge its denial of an I-360 Petition. The government argues that under the regulation, only the visa petitioner has standing.

The court recently addressed the issue of a beneficiary's standing to challenge the denial of an I-360 Petition in *Khalid v. DHS*, No. 4:12-cv-3492, 2014 WL 793078 (S.D. Tex. Feb. 25, 2014). In that case, the court held that a religious employee's interest in coming to or remaining in the United States was only tangentially related to Congress's purpose in passing the statute. *Id.* at *8. "The language of the statute and the cap on the number of special-immigrant visas, added to the INA's overall goal of protecting the American labor force, does not show a Congressional concern to further the interests of religious-worker aliens who seek to come to or remain in the Untied States." *Id.* at *9. The same reasoning applies here. The INA sections at issue do not protect Uzoma as the beneficiary of an I-360 Petition filed on his behalf. Uzoma's claims challenging the I-360 Petition denial and the denial of the motion to reopen or reconsider are dismissed for lack of standing.

IV.     **The Motions for Summary Judgment**

      A.     **The Applicable Legal Standards**

           1.     **Summary Judgment**

"Summary judgment is required when 'the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enterprises, Inc.*, — F.3d —, 2015 WL 1600689, at *2 (5th Cir. Apr. 8, 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at *2 (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotations omitted); *see also Celotex*, 477 U.S. at 325.  Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond

17

the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 2015 WL 1600689, at *2 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 2015 WL 1600689, at *2.

When the parties cross-move for summary judgment, the court must review "each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010) (internal quotation marks and alteration omitted). Nevertheless, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

### 2.    Review of Visa Application Denials

"It is well settled that the applicant for a visa bears the burden of establishing eligibility." *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989). "A denial by [the USCIS] of an application for a visa may be reversed only if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* (citing 5 U.S.C.

18

§ 706(2)(a)).  While the district court's role is to ensure that the USCIS engaged in "reasoned decision-making," the agency is "entitled to considerable deference in its interpretation of the governing statute."  *Id.* (internal citations omitted).  An agency like the USCIS acts arbitrarily and capriciously if it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Brown v. Napolitano*, 391 F. App'x 346, 350 (5th Cir. 2010) (quoting *Tex. Oil & Gas Ass'n v. U.S. EPA*, 161 F.3d 923, 933 (5th Cir. 1998)).

Agency action is arbitrary and capricious "only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir. 1993) (quotation omitted).  "The agency decision need only have a rational basis, and it does not have to be a decision which the court would have made." *Id.*  In reviewing a challenge to the agency's decision, "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fed Power Commission v. Transcontinental Gas Pipeline Corp.*, 423 U.S. 326, 331 (1976); *see also Luminant Generation Co., LLC v. EPA*, 714 F.3d 841, 850 (5th Cir. 2013) (quoting *Fed Power Commission*, 423 U.S. at 332)).

The APA also requires courts to set aside agency actions, findings, and conclusions that are not supported by substantial evidence.  5 U.S.C. § 706(2)(E).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  Granting summary judgment reversing the denial of a visa petition based on this standard requires

19

the petitioner to show that undisputed facts prove by a preponderance of the evidence that the alien "is entitled to the nonimmigrant, immigrant, [or] special immigrant . . . status claimed." 8 U.S.C. § 1361. "'[T]o obtain a reversal of the [agency's] decision[,] the alien must show that the evidence he presented was so compelling that no reasonable fact-finder could fail to arrive at his conclusion." *Brown*, 391 F. App'x at 350 (quoting *Silwany-Rodriguez v. INS*, 975 F.2d 1157, 1160 (5th Cir. 1992)). "[T]he evidence must not merely support the alien's conclusion but must compel it." *Id.* (quoting *Silwany-Rodriguez*, 975 F.2d at 1160).

"A motion to reopen must state the new facts to be provided in the reopened proceeding and be supported by affidavits or other documentary evidence." 8 C.F.R. § 103.5(a)(2). Motions to reopen are disfavored. A court reviews an order denying a motion to reopen for abuse of discretion. *See INS v. Abudu*, 485 U.S. 94, 110 (1988).

**B.     Analysis**

The Redeemed Christian Church alleges that the USCIS abused its discretion by concluding that the Church had failed to show that Uzoma worked solely as a minister and did not have any secular employment. To obtain a religious-vocation visa, the petitioner must establish that the visa beneficiary came to the United States to work full-time in a compensated position solely in the vocation of a minister of a bona-fide religious denomination, 8 C.F.R. §§ 204.5(m)(2)(i), 204.5(m)(5), and not "in secular employment," 8 C.F.R. § 204.5(m)(7)(xi). The petitioner must provide reliable evidence supporting the visa application. "[I]t is incumbent upon the petitioner to resolve [any] inconsistencies by independent objective evidence. Attempts to explain or reconcile [any] conflicting accounts, absent competent objective evidence pointing to where the truth, in fact, lies, will not suffice." *Matter of Ho*, 19 I&N Dec. 582, 591 (BIA 1988).

20

The AAO found that the Redeemed Christian Church did not meet its burden of proving, through documentary evidence, that Uzoma did not intend to profit when he registered Heph Technology Services, Cute Apparel, and Unicorn Billing Services, and when he bought 16 Dell computers and sold them to his friend in Nigeria.  The USCIS initially denied the I-360 Petition.  On appeal, the AAO rejected the USCIS's basis for denial but remanded to the USCIS, finding "an issue regarding the beneficiary's secular activities."  (CAR 153).  According to the AAO, the Redeemed Christian Church had not submitted evidence supporting its claim that Uzoma's involvement with Heph Technology Services was not secular employment.  The AAO directed the USCIS to "provide the petitioner an opportunity to submit first-hand documentation (such as invoices and bank documents) to show how much the beneficiary spent to order and ship the computers, and how much he received from his unidentified 'friend in Nigeria.'"  (CAR 154).  The AAO noted that if Uzoma "received anything beyond his own expenses in purchasing and shipping the computers, then [it] would be very difficult to consider the surplus as anything other than business income."  (*Id.*).  The AAO also stated that the Redeemed Christian Church "must submit documentary evidence that will persuasively establish that Heph Technology Services was not, and was never intended to be, a profit-generating enterprise."  (*Id.*).  The AAO's decision made clear that "testimonial" evidence would not suffice.  (*Id.*).

On remand, the Redeemed Christian Church presented documentary evidence, including the invoices and bank documents the AAO had referred to.  The documents showed that Heph Technology Services lost money on the computer transaction.  The commercial invoice the Church submitted billing Okoronkwo for the computers listed a higher invoiced amount than Heph Technology Services had paid for the computers.  The invoice stated that the amount listed included

21

"Shipping & Handling to Lagos," Nigeria.  The Church explained that the difference between the invoiced amount and the amount the computers cost was due to the shipping and export fees.  The Church also submitted an affidavit from Okoronkwo, who said that he had asked Uzoma to loan him money as a friend so that he could purchase the computers, but Uzoma refused and Sekumade paid for the computers on Okoronkwo's behalf.  An affidavit from Sekumade was consistent, stating that he provided all the money for the computers, that Uzoma received no benefit from the transaction, and that Uzoma's only job was as a pastor.  (CAR 134–38).

The USCIS denied the Petition again in October 2010, on the basis that the evidence showed that Uzoma was involved in secular activity.  "[A]lthough the business transaction resulted in a loss, the intent of the transaction, as evidenced by the billing statement, was to obtain a profit."  (CAR 104).  The USCIS also found that Unicorn Billing Services and Cute Apparel raised suspicions that Uzoma had engaged in secular employment because no income from the businesses was included on Uzoma's tax returns.  (*Id.*).

The AAO affirmed the denial, finding that Uzoma had engaged in secular business activities.  The AAO acknowledged evidence showing that Uzoma had not in fact profited from the computer sale, but agreed the evidence did not show a lack of intent to profit from Heph Technology Services.  (CAR 80).  The AAO criticized the fact that the "majority" of the evidence the Redeemed Christian Church had submitted on remand was testimonial rather than documentary.  The AAO noted that its remand order stated that testimonial claims by the beneficiary and others would not suffice to meet the Church's burden.  At the same time, the AAO made clear that its decision rested in part on the fact that the Church had not submitted a statement from Uzoma or his wife "to explain their activities."  (CAR 81).

The Redeemed Christian Church moved to reopen to submit the testimonial evidence from Uzoma and his wife that the AAO had previously told the Church would not be sufficient, but now criticized the Church for not including.  The Church also submitted additional documents, including the Uzomas' amended tax returns.

The AAO declined to reopen the case to consider the statements and other evidence because they should have been submitted earlier, and in any event, presented no "new facts" because "[t]he [testimonial] arguments presented on motion are not new facts and the [documentary] evidence submitted on motion is not 'new.'"  (CAR 6).  Once again, the AAO stated that testimonial evidence was insufficient to meet the Redeemed Christian Church's burden.  (*Id.*).

The record suggests that the AAO abused its discretion by failing to consider the new testimonial evidence and documents and in apparently disregarding the testimonial evidence from Sekumade and Okoronkwo.  It is unclear why the AAO apparently refused to consider the testimonial evidence that the Church submitted.  The AAO is not required to accept testimonial evidence as true, even if it is uncontradicted, if the agency finds it lacking in credibility.  *See Soltane v. U.S. Dep't of Justice*, 381 F.3d 143, 151–52 (3d Cir. 2004) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1254 (11th Cir. 1983); *NLRB v. Walton Mfg. Co.*, 369 U.S. 404, 408 (1962)).  But the AAO may not reject or disregard evidence simply because it is testimonial.  *Id.*  The case the AAO cited dealt with 8 C.F.R. § 204.6(j)(3), a regulation that explicitly requires certain forms of documentary evidence.  *See Matter of Soffici*, 22 I&N Dec. 158, 160 (BIA 1998).[1]  The statute and regulations at issue here, including 8 U.S.C. § 1101(a)(27)(C) and 8 C.F.R. §§ 204.5(m)(2)(i), (5), and (7)(xi), do

---

[1]  Similarly, in *Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg. Comm. 1972), the case that *Soffici* cited, stronger, documentary proof was needed because the testimonial evidence the petitioner submitted directly contradicted documentary evidence in the record.

not require the evidence to be documents rather than affidavits or other testimony.

In the absence of an explicit requirement to submit certain kinds of documentary evidence, "an agency is generally under at least a minimal obligation to provide adequate reasons explaining why it has rejected uncontradicted evidence," including testimonial evidence. *Id.* (citing Richard J. Pierce, Jr., 2 Administrative Law Treatise § 11.2 at 791 (2002)).  As noted, the agency can reject testimonial evidence it finds not credible or contradicted by documentary evidence in the administrative record, *see id.*; *Matter of Treasure Craft of California*, 14 I&N Dec. 190.  The AAO did not make either finding here, explicitly or implicitly.  And the record does not appear to show that the testimony was internally inconsistent or contradictory so as to justify the reliance only on the documents without the explanations provided in the affidavits or statements.  There were inconsistencies between some of the documents earlier submitted and some of the Church's explanations, including about when Heph Technology Services was first registered, whose idea it was to register the name, and why Uzoma's wife had rented office space for Cute Apparel and then ended the rental.  But the documents and the affidavits were both internally consistent about these and other facts and uncontradicted by other record evidence.  The receipts, commercial invoice, bank statements, wire transfer requests, tax returns, and Harris County clerk records were all consistent with the testimonial evidence from Sekumade, Okoronkwo, Uzoma, and Uzoma's wife, that Heph Technology Services conducted a single transaction; the transaction was Okoronkwo's idea; Sekumade or Uzoma registered a business name—Heph Technology Services—because Dell would not sell more than five computers to an individual and because it was difficult for Okoronkwo to wire money from Nigeria to an individual  rather than to a business; Uzoma never intended to make money from his involvement with  Heph Technology Services, but rather to accommodate

Okoronkwo's one-time request for computers; Sekumade paid for the computers, not Uzoma, Heph Technology Services lost money on the transaction, and Uzoma received no money from the transaction; Unicorn Billing Services and Cute Apparel were names registered for Uzoma's wife in anticipation of her receiving work authorization and conducted no business; and Uzoma and his wife withdrew the registrations for all three companies in 2008.

The USCIS cites cases holding that discrepancies in the record can support a finding that the beneficiary did not work solely as a minister. But in those cases, the discrepancies clearly showed secular employment, not a limited role in facilitating a transaction for a friend or spouse. And those cases did not include consistent documentary and testimonial evidence supporting the petitioner's claims. In *Hawaii Saeronam Presbyterian Church v. Ziglar*, 243 F. App'x 224, 226 (9th Cir. 2007) (unpublished), the petitioning church had failed to submit required forms of evidence showing that the beneficiary worked full-time as a minister, and the financial statements it did submit were inconsistent. In *Eastern Orthodox Broth. of Kellion of Holy Transfiguration v. Napolitano*, No. 1:13-cv-478, 2014 WL 136202, at **3–4 (N.D. Ohio Jan. 14, 2014), the petitioner itself submitted a letter stating that the beneficiary had worked "odd jobs" to make money, precluding a finding that he had worked solely as a minister. In *Matter of Mirza*, A75-935-229, 2006 WL 3203661, at *1 (BIA Aug. 31, 2006), *aff'd sub nom. Mirza v. Mukasey*, 268 F. App'x 122 (2d Cir. 2008), the beneficiary admitted that he had worked part-time as a cab driver in addition to working as a minister. In *Ukranian Autocephalous Orthodox Church v. Chertoff*, 630 F. Supp. 2d 779 (E.D. Mich. 2009), the petitioning church gave contradictory information about the beneficiary's job and submitted evidence showing that he had permanent residence 200 miles away from the city where he supposedly worked full-time as a minister. The evidence and inconsistent information precluded finding that he was working as claimed. *Id.* at 788–89. And in *Ogundipe v. Mukasey*, 541 F.3d 257,

261 (4th Cir. 2008), undisputed documentary evidence showed that the beneficiary had worked in "sales" and as an "assistant manager" when the petitioner claimed he was working solely as a minister.

None of these cases held that an agency could disregard testimonial evidence without making a credibility finding, to conclude that the documentary evidence, considered without affidavits or statements explaining them, failed to show that the beneficiary worked solely as a minister. The refusal to consider testimonial evidence is particularly troubling here because the AAO first instructed the Church that testimonial evidence would not "suffice" to meet its burden, then faulted the Church for failing to submit testimonial evidence earlier, and then apparently disregarded the testimonial evidence that the Church did submit without finding it lacking in credibility. The record also shows that the evidence of secular employment here was far less than in the cases the government cites. The record shows that the AAO's decision not to reopen was arbitrary and capricious.

The Redeemed Christian Church has not conclusively established that Uzoma was entitled to have his I-360 Petition approved. The Church was both slow and incomplete in many of its submissions on Uzoma's behalf. But the Church has met its burden of showing that the agency's failure to consider all of the evidence submitted was arbitrary and capricious. The safest course is to remand to the USCIS for additional investigation and explanation. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). On remand, the USCIS should determine whether the testimonial evidence,

26

considered with the documents and testimony the Redeemed Christian Church submitted in its motions to reopen, including the affidavits of Sekumade and Okoronkwo and the statements from Uzoma and his wife, is credible, and whether the credible testimonial and documentary evidence together meet the Church's burden.

## V.    Conclusion

Uzoma's claims are dismissed for lack of standing.  The USCIS's motion for summary judgment, (Docket Entry No. 50), is denied.  The Redeemed Christian Church's motion for summary judgment, (Docket Entry No. 52), is granted in part.  The case is remanded to the USCIS for additional review, including of the testimonial evidence the Redeemed Christian Church has submitted.

SIGNED on May 13, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge