United States District Court
Southern District of Texas

**ENTERED**

May 26, 2016

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| THE REDEEMED CHRISTIAN CHURCH | § | |
| OF GOD and JOEL ONYEMA UZOMA, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-2170 |
| | § | |
| UNITED STATES CITIZENSHIP AND | § | |
| IMMIGRATION SERVICES, | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING MOTION TO RECONSIDER, VACATING MAY 13, 2015
OPINION, AND ISSUING AMENDED MEMORANDUM AND OPINION**

The Redeemed Christian Church of God and Joel Onyema Uzoma challenge the denial of

an I-360 Petition that the Redeemed Church filed on Uzoma's behalf. The United States Citizenship

and Immigration Services ("USCIS") moved for summary judgment. (Docket Entry No. 50). The

plaintiffs responded and cross-moved for summary judgment; the USCIS responded. (Docket Entry

Nos. 52, 53). The court dismissed Uzoma's claims for lack of standing, denied the USCIS's motion

for summary judgment, granted the Redeemed Church's motion for summary judgment in part, and

remanded to the agency. (Docket Entry No. 55).

The USCIS moved for reconsideration, raising four alleged errors: (1) the court granted

summary judgment based on an argument the Redeemed Church did not raise; (2) the court erred

in applying substantial-evidence review to the agency's factual findings; (3) the court applied the

wrong standard of review in evaluating the agency's denial of the Redeemed Church's motion to

reopen; and (4) the court mischaracterized the record evidence and the agency's decisions. (Docket

Entry No. 60). The Redeemed Church responded, and the USCIS replied. (Docket Entry Nos. 61,

66).  The USCIS's briefing on reconsideration correctly pointed out that the court's May 13, 2015 opinion in part applied the wrong legal standard and was unclear about the final agency action that was the basis for the remand order.

Based on the pleadings, the motions and responses, the certified administrative record, and the applicable law, the court grants the USCIS's motion for reconsideration, vacates the May 13, 2015 Memorandum and Opinion, and issues this amended Memorandum and Opinion in its place. On reconsideration, the analysis and grounds differ from the prior ruling, but the result is largely unchanged.  On reconsideration, the court grants the Redeemed Church's motion for summary judgment and remands this case to the agency to clarify the reasons supporting its denial of the I-360 Petition the Redeemed Church filed on Uzoma's behalf.  In particular, the agency should explain whether it considered all the evidence submitted, including the testimonial evidence.  If not, the agency should reevaluate its decision in light of that evidence, making credibility and reliability judgments necessary to rule on the relief the Redeemed Church sought.

The reasons for this ruling are explained below.

# I.   Background

## A.   I-360 Petitions

To obtain an immigrant religious-worker visa, a worker's employer must file a Form I-360. 8 C.F.R. § 204.5(m).  Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, an I-360 immigrant visa is for a "special immigrant religious worker."  This visa is available to ministers and other religious workers operating in either a professional or nonprofessional capacity in a religious vocation or occupation, as defined in 8 U.S.C. § 1101(a)(27)(C).  *See also* 8 C.F.R. § 204.5(m)(2).

The I-360 Petition the Redeemed Church filed on Uzoma's behalf invokes 8 U.S.C. § 1101(a)(27)(C).  That section defines "special immigrant":

> (27)   The term "special immigrant" means—
>
> . . .
>
> (C)   an immigrant, and the immigrant's spouse and children if accompanying or following to join the immigrant, who
>
> . . .
>
> (ii)   seeks to enter the United States—
>
> (I)   solely for the purpose of carrying on the vocation of a minister of that religious denomination,
>
> (II)   before September 30, 2015, in order to work for the organization at the request of the organization in a professional capacity in a religious vocation or occupation, or
>
> (III)   before September 30, 2015, in order to work for the organization (or for a bona fide organization which is affiliated with the religious denomination and is exempt from taxation as an organization described in section 501(c)(3) of Title 26) at the request of the organization in a religious vocation or occupation[.]

8 U.S.C. § 1101(a)(27)(C)(ii).

The process for a special-immigrant worker visa begins when a religious organization files an I-360 Petition on the worker's behalf.  The director of a USCIS field office—here, the Director of the USCIS California Civil Service Center—reviews the Petition.  If it is approved, the beneficiary may apply for a visa either from abroad or, if already in the United States, to adjust of status to a lawful permanent resident.  *Id.*  If the Petition is denied, the petitioner may appeal to the Administrative Appeals Office.  8 C.F.R. § 103.3.  Under some circumstances, the Director may certify its decision directly to the Appeals Office.  8 C.F.R. § 103.4.

The regulations require religious employers to provide specific information with the I-360 Petition to show the alien's eligibility for classification as a special immigrant religious worker. The regulation states:

> (m)   Religious workers.  This paragraph governs classification of an alien as a special immigrant religious worker as defined in section 101(a)(27)(C) of the Act and under section 203(b)(4) of the Act.  To be eligible for classification as a special immigrant religious worker, the alien (either abroad or in the United States) must:
>
> (1)   For at least the two years immediately preceding the filing of the petition have been a member of a religious denomination that has a bona fide non-profit religious organization in the United States.
>
> (2)   Be coming to the United States to work in a full time (average of at least 35 hours per week) compensated position in one of the following occupations as they are defined in paragraph (m)(5) of this section:
>
> (i)   Solely in the vocation of a minister of that religious denomination;
>
> (ii)   A religious vocation either in a professional or nonprofessional capacity; or
>
> (iii)   A religious occupation either in a professional or nonprofessional capacity.
>
> (3)   Be coming to work for a bona fide non-profit religious organization in the United States, or a bona fide organization which is affiliated with the religious denomination in the United States.
>
> (4)   Have been working in one of the positions described in paragraph (m)(2) of this section, either abroad or in lawful immigration status in the United States, and after the age of 14 years continuously for at least the two-year period immediately preceding the filing of the petition.

8 C.F.R. § 204.5(m).

The "petitioning organization"—the religious employer—must certify in the petition that it is a "bona fide non-profit religious organization" or affiliate; that "the alien has worked as a religious worker for the two years immediately preceding the filing of the application and is

otherwise qualified for the position offered"; and that "the alien has been a member of the denomination for at least two years immediately preceding the filing of the application."  8 C.F.R. § 204.5(m)(7).  The employer must also certify that "the alien will not engage in secular employment."  *Id.*  The employer must file evidence showing that it is a religious denomination or affiliated with one and that the employee is religiously qualified.  The employer must also file evidence of the religious employee's compensation and prior employment.  *See* 8 C.F.R. § 204.5(m)(8)–(12).

A religious-entity employer may obtain an R-1 nonimmigrant visa for a religious worker to come to the United States temporarily.  While the religious worker is in the United States, the employer may file an I-360 Petition seeking a special immigrant visa on the worker's behalf.  If granted, the visa provides the basis for the worker to obtain an adjustment of status to lawful permanent resident.  That is what the Redeemed Christian Church unsuccessfully tried to do for Uzoma.

### B.     The Redeemed Church's I-360 Petition for Uzoma

#### 1.     The April 2006 Filing

The Redeemed Christian Church is a religious entity incorporated in Texas in December 2003.  It obtained tax-exempt status under § 501(c)(3) of the Internal Revenue Code in June 2004.  The Redeemed Christian Church filed an I-129 Petition to have Joel Uzoma, a Nigerian citizen, admitted into the United States as a nonimmigrant religious worker.  Uzoma entered the United States on October 14, 2003 as a nonimmigrant visitor.  (Certified Administrative Record ("CAR") 118, 719).  Uzoma's wife and son had entered seven days earlier, also as nonimmigrant visitors. (*Id.*).

In November 2003, the USCIS approved the I-129 Petition for Uzoma and related Petitions for Uzoma's wife and son.  (CAR 118–19, 719).  Their admission statuses expired in November 2006.  (CAR 719, 747).  The Redeemed Christian Church then filed an I-360 Petition on Uzoma's behalf in April 2006, seeking to have him classified as a special immigrant religious worker.  (CAR 719, 721).  The Petition listed Uzoma's wife and son as derivative beneficiaries.  (*Id.*).  The Redeemed Christian Church included evidence about its tax-exempt status, Uzoma's qualifications and experience, his role at the Church, and his financial status.  (CAR 723–963).

## 2.  The Director Denies the Petition

In December 2006, the USCIS sent the Redeemed Christian Church a request for evidence. The request sought information verifying that the Redeemed Christian Church qualified as a nonprofit organization, that it had a connection with Uzoma, and that it was able to pay Uzoma until he obtained lawful permanent residence.  (CAR 520–23).  The request also asked the Church to provide evidence about Uzoma's experience as a religious worker, the requirements of his position, his work history from 2004 to 2006, the amounts the Church had paid him, and how Uzoma supported himself and his family.  (*Id.*).  Finally, the request asked for Uzoma's tax returns for 2004 to 2006, W-2s, recent pay stubs, information documenting his immigration status, the letter offering him employment, and a detailed description of his work responsibilities at the Church. (*Id.*).

The Redeemed Christian Church responded to this request in February 2007.  The Church provided information on Uzoma's duties as Pastor-in-Charge of the Redeemed Christian Church's Dayspring Chapel.  The Church stated that Uzoma had "no supplementary job."  (CAR 574–75, 673).  The Church also provided information on Uzoma's immigration status, his qualifications to be the Pastor-in-Charge, his tax returns and pay stubs, and the Church's 2004 financial statement.

6

(CAR 526–43, 578–79, 591–703, 711–12).  The Church told the USCIS that it would pay Uzoma $1,800 per month to start, then $2,000 per month.  (CAR 702–03).

The USCIS sent the Redeemed Christian Church a second request for evidence on May 1, 2007.  (CAR 453–55).  That request asked the Church to explain discrepancies between the salary it said it paid Uzoma and the salary he declared on his 2004 and 2005 tax returns.  (*Id.*).  The request also asked the Church to explain how Uzoma was supporting himself and his family, given the limited income he reported on those tax returns.  (*Id.*).  The second request sought additional information on Uzoma's duties, his finances, his salary and other allowances, and his authorization to perform religious duties.  (*Id.*).

The Redeemed Christian Church responded to this second request for evidence on May 25, 2007.  The Church explained the discrepancies in Uzoma's salary on the basis that: (1) it included a housing allowance; (2) there were errors in Uzoma's reported wage for 2005, and he was in fact paid $22,424.00 that year rather than the $2,400 per month the Church had reported; (3) the Church also paid for the Uzoma family's medical expenses; and (4) Uzoma received "love gifts" from individual Church members.  (CAR 440, 443).  The Church included additional evidence about its own and Uzoma's finances.  (CAR 445–52, 461–76, 484–89).  The Church repeated its earlier statements that Uzoma "neither had any supplementary job anywhere nor solicited any. . . . [Uzoma] never worked anywhere else in the United States and this is a true statement."  (CAR 440).

On July 20, 2008, the USCIS conducted a site inspection of the Dayspring Chapel.  (CAR 436).  During the visit, Uzoma claimed that he was paid $2,400 per month, including a housing allowance, and said that neither he nor his wife had any other employment.  (CAR 436–37).  During the same visit, a man identifying himself as a Church representative arrived wearing an EMT

uniform with the logo of a company located in the same office building as the Church's Dayspring Chapel.  In its site-inspection report, the USCIS stated that it was unable to determine whether this man was a Redeemed Christian Church representative or an employee of the other company.  (*Id.*).

On October 7, 2008, the USCIS issued a Notice of Intent to Deny the I-360 Petition.  (CAR 289–94, 434–39).  The notice stated that a public-records search revealed unauthorized employment by Uzoma and his wife.  Uzoma reportedly owned a business called Heph Technology Services and his wife owned Cute Apparel.  Both businesses had an address in the same office building as the Dayspring Chapel.  (CAR 437).  The notice also reported problems with the site inspection and stated that whether Uzoma could support his family remained unclear.  The notice told the Redeemed Christian Church that it needed to provide additional evidence, including Uzoma's W-2 forms, the Church's quarterly wage reports listing Uzoma as a paid employee, and an itemized record from the Social Security Administration showing whether Uzoma had sought outside employment.  (*Id.*).

The Redeemed Christian Church responded to the USCIS request on October 30, 2008, providing all of the documents requested and explaining the deficiencies the USCIS had raised after the site visit.  (CAR 295–433).  The Church's response reiterated that Uzoma had no outside employment.  The response explained that Uzoma had created Heph Technology Services in July 2007 only to buy computers to send to a friend in Nigeria.  (CAR 299–300).  The response explained that Uzoma needed a business name to buy the 16 computers his friend wanted and to allow the Nigerian bank to send the money to pay for the computers back to the United States.  (CAR 300–01).  The Church's response stated that Uzoma "sincerely did not see it as a violation of status in any way; neither did he have any intention to violate his status," and explained that Uzoma did not know

8

that registering a business name to buy computers for a friend in Nigeria would violate his status. (CAR 301). The Church stated that when Uzoma realized the risk, he "ceased from any such transaction" with Heph Technology Services. (*Id.*). The response attached Uzoma's Social Security record, which did not list any employers besides the Redeemed Christian Church. The record did, however, show that Uzoma had self-employment earnings from 2004 to 2007. (CAR 309–10).

The Church's response also stated that Uzoma's wife was a fashion-merchandising student at Houston Community College, and that "[s]he established the clothing place primarily as a practical center for herself in order to intensely practice what she is currently studying in College." (*Id.*). The response stated that Uzoma's wife did not intend to violate her status and did not believe that the clothing business she registered was a violation.

The Director of the USCIS California Civil Service Center denied the I-360 Petition on February 25, 2009. (CAR 286–88). The Director's denial notice cited the Social Security record showing that Uzoma received self-employment income for tax years 2004 to 2007, and stated that "without a Schedule C or other supportive documentation, USCIS cannot determine how this income was derived." (CAR 287).

### 3. The Appeals Office Remands to the Director

In March 2009, the Redeemed Christian Church appealed the denial. (CAR 155–282). The Church stated that it had made no misrepresentations and had demonstrated Uzoma's eligibility for special immigrant religious-worker status. The Church argued that Uzoma's involvement with Heph Technology Services "was an error in [Uzoma's] judgment which occurred through the wrong advice of a member attorney." (CAR 117). The Church explained that "[s]ometimes [sic] last year," after a Nigerian friend asked Uzoma to purchase 16 computers and send them to Nigeria, Uzoma

asked a congregant who was an attorney for advice.  The attorney advised Uzoma "to register a company in his name to make it authentic," which he did.  The Church stated that Uzoma "did no[t] intend to conduct a business" and had withdrawn his name from the business's registration once he learned that it might violate his immigration status.  (*Id.*).

The Redeemed Christian Church also addressed the self-employment income shown on Uzoma's records.  The Church explained that the amounts were not from outside employment but instead from the housing allowance Uzoma received from the Church.  (CAR 214–15).  The Church attached a letter from its accountant stating that the self-employment earnings were for housing.  (CAR 180–82, 191).

On January 7, 2010, the Appeals Office remanded the I-360 Petition to the Director for further action and consideration.  (CAR 147–54).  The Appeals Office found that one of the statutory sections the Director relied on in denying the Petition simply did not apply.  (CAR 152).  The Appeals Office also rejected the Director's reliance on Uzoma's self-reported, self-employment income, finding that the reported amounts represented Uzoma's housing allowance.  (CAR 153).  But the Appeals Office found that the I-360 Petition could not be approved unless certain issues were resolved in the Redeemed Christian Church's favor.

The Appeals Office stated that it was unclear whether Uzoma entered the United States "solely for the purpose of carrying on the vocation of a minister," as 8 U.S.C. § 1101(a)(27)(C)(ii)(I) requires, and that Uzoma's registration of Heph Technology Services raised questions.  (CAR 153–54).  The Appeals Office noted that the Church had not submitted evidence supporting its claims about Uzoma's business's registration.  The Appeals Office explained:

> For instance, it is not clear why [Uzoma] could not order computers
> under his own name, and therefore had to create 'a business name.'

10

With respect to the assertion that Heph Technology Services was never a business venture for [Uzoma], the director must provide [the Redeemed Christian Church] an opportunity to submit first-hand documentation (such as invoices and bank documents) to show how much the beneficiary spent to order and ship the computers, and how much he received from his unidentified "friend in Nigeria."  If he received anything beyond his own expenses in purchasing and shipping the computers, [it] would be very difficult to consider the surplus as anything other than business income.  Because it is established and uncontested that [Uzoma] registered a business name under which he purchased and shipped computers, [the Redeemed Christian Church] must submit documentary evidence that will persuasively establish that Heph Technology Services was not, and was never intended to be, a profit-generating enterprise.  *Testimonial claims by the petitioner, the beneficiary, and/or the 'friend in Nigeria' cannot and will not suffice*.

(CAR 153–54) (emphasis added).

### 4.    On Remand, the Director Again Denies the Petition

The USCIS issued a new Notice of Intent to Deny on August 17, 2010, noting that Heph Technology Services, Unicorn Billing Services, and Cute Apparel were registered to Uzoma or his wife and had business addresses in the same office building as the Dayspring Chapel.  (CAR 142–46).  The USCIS followed the Appeals Office's directions on remand by instructing the Redeemed Christian Church that it needed to "submit documentary evidence that will persuasively establish that Heph Technology Services was not, and was never intended to be, a for-profit enterprise.  Testimonial claims by [the Redeemed Christian Church], [Uzoma,] and/or the 'friend in Nigeria' cannot and will not suffice."  (CAR 146).

The Redeemed Christian Church responded to USCIS in September 2010.  (CAR 105–41).  The Church claimed that Uzoma's friend in Nigeria, now identified as Emeka Okoronkwo, had asked Uzoma to purchase and send him the computers.  Okoronkwo would reimburse Uzoma for the cost.  Uzoma initially declined because he was not familiar with the export process.  (CAR 110).

11

Uzoma then discussed the request with a lawyer who was a member of the congregation.  The lawyer, identified as John Sekumade, told Uzoma that he would have to register a business name because Dell would not sell more than five computers at once to an individual, but only to a business.  (*Id.*).  The Church asserted that it was Sekumade, not Uzoma, who registered Heph Technology Services in his name and in Uzoma's name, paid for the computers, and received them at his law office.  The law office was located in the same office building as the Dayspring Chapel. (*Id.*).  The computers were shipped to Okoronkwo in Nigeria.  United States Customs officials seized the computers because there was no commercial invoice.  (*Id.*).  The Church informed the USCIS that Heph Technology Services then created a commercial invoice, which "included all the other expenses to be incurred in addition to the purchase price, fine paid to US Customs, cost of shipping and custom payments and unforeseen domestic expenses in Nigeria."  (CAR 111).  The delay and the fine, and the shipping and handling fees, meant that Okoronkwo, Uzoma's friend in Nigeria, "sold the computers at a loss."  As a result, Okoronkwo "remitted [a] sales amount which was less than the cost."  (*Id.*).  The Church asserted that when Uzoma learned that the transaction might violate his immigration status, he withdrew his name from the business registration and did not use it again.  (*Id.*).

The Church sent the USCIS documents with its response.  The documents USCIS received included receipts from Dell showing that the computers cost $31,285.56 and were shipped to Uzoma at Heph Technology Services.  The shipping address was in the same office building as the Dayspring Chapel. (CAR 125).  Nigerian wire-transfer requests and bank statements showed that Caller's Spring Nigeria Ltd., Okoronkwo's company, sent Heph Technology Services $28,847.75. (CAR 127–33).  A document from Heph Technology Services entitled "Commercial Invoice No

12

A0001" listed the total sales price as $42,000.00, inclusive of "Shipping & Handling to Lagos."
(CAR 137).

The Church also sent the USCIS testimonial evidence.  The Church submitted an affidavit
from Sekumade stating that he and Uzoma had registered Heph Technology Services but that
Sekumade was the only one who paid for the computers.  Sekumade testified that the computers
were sold at a loss and that Uzoma did not get any of the money.  (CAR 134).  The Church also
submitted an affidavit from Okoronkwo stating that he first asked Uzoma to buy the computers in
2007, that Uzoma contacted a lawyer friend in Houston to provide the money, and that Okoronkwo
sold the computers at a loss.  (CAR 136).

On October 5, 2010, the Director again denied the I-360 Petition and this time certified the
case to the Appeals Office for review.  (CAR 102–04).  The Director's denial explained that the
Redeemed Christian Church "has not been forthright in the evidence submitted."  (CAR 103–04).
Although the Church had provided information about Heph Technology Services in 2007 and 2008,
Harris County records showed that Uzoma had also registered the business name in 2004 and 2005.
Additionally, the denial stated that the $42,000 commercial invoice for the computers from Heph
Technology Services showed that Uzoma had engaged in secular commercial activity because the
invoiced amount was higher than the purchase price.  The denial concluded that "the intent of the
transaction, as evidenced by the billing statement, was to obtain a profit."  (*Id.*).  The denial stated
that the Uzomas' involvement with Cute Apparel and Unicorn Billing Services raised further
suspicions about Uzoma's secular employment and supported the conclusion that he did not come
to the United States to work solely as a minister.  (*Id.*).

In response to the Notice of Certification, the Redeemed Christian Church submitted

statements explaining that Uzoma had forgotten about his involvement with Heph Technology Services in 2004.  The Church clarified that Okoronkwo had first asked for Uzoma's help buying computers in 2004, that Uzoma had initially agreed but then backed out after learning that the shipping process was not "straightforward," and that there was a "misunderstanding" about who would pay for the computers.  (CAR 83).  The Church also stated that Cute Apparel and Unicorn Billing Services were not "real" businesses but merely names Uzoma's wife registered in anticipation of obtaining authorization to work.  (CAR 84).  The Church insisted that neither Cute Apparel nor Unicorn Billing Services was ever active, but inconsistently stated that Cute Apparel had rented an office in the same office building as the Dayspring Chapel.  The rental stopped when Uzoma's wife could no longer afford to pay the rent.  (CAR 84–85).

### 5.    The Appeals Office Denies the Petition

In September 2012, the Appeals Office denied the I-360 Petition after determining that Uzoma's secular business activities meant that the Church had not met its burden of showing that he was working only as a minister.  (CAR 79).  The Appeals Office acknowledged that the Church had submitted evidence in response to the remand order, including Sekumade's affidavit and other documents relevant to the purchase and sale of the computers.  The Appeals Office found that Heph Technology Services's loss on the computer sale did not show that Uzoma lacked the intent to make a profit when he bought and sold the computers and that the Redeemed Christian Church had not submitted statements from Uzoma or his wife explaining their activities.  (CAR 80–81).  The Appeals Office did not analyze the Sekumade or Okoronkwo affidavits, explain why those affidavits were not considered, or discuss how they factored into the decision to deny the Petition.

### 6.    The Appeals Office Denies the Motion to Reopen

14

The Redeemed Christian Church filed a motion to reopen on October 30, 2012.  (CAR 7–76). The Church clarified that Uzoma had mistakenly registered Heph Technology Services in 2004 and 2005 without realizing that it would violate his immigration status.  He had used the business only once, in 2007.  (CAR 12).  The Church stated that Uzoma and his wife did not intend to conduct any business activities.  (CAR 12–13).  The Church submitted a statement from Uzoma corroborating the Church's earlier accounts.  (CAR 16–19).  Uzoma stated that Okoronkwo first contacted him about a computer purchase in 2004.  After Uzoma learned that Okoronkwo could not pay for the computers, Uzoma withdrew the name Heph Technology Services.  (*Id.*).  Uzoma explained that he forgot about the business-name registration until Okoronkwo contacted him again in 2007.  (*Id.*).

The Church also included a statement from Uzoma's wife.  She said that Uzoma was not involved in Cute Apparel but had merely lent his name to register it as a courtesy to her.  (CAR 20). She did not know that registering Cute Apparel and leasing office space for it would violate her immigration status, and she stopped on learning that it was considered a violation.  (*Id.*).  The Church also submitted bank statements from Heph Technology Services; tax returns for Uzoma and his wife, amended to show no self-employment income; and documents showing that in 2008, Uzoma and his wife had withdrawn the three business names.  (CAR 21–75).

In May 2013, the Appeals Office denied the motion to reopen.  The Appeals Office considered the Redeemed Christian Church's motion as a request both to reopen and to reconsider, and declined both.  The Appeals Office found that: (1) the Church had failed to provide meaningful documentary evidence showing that Uzoma came to the United States solely to work as a minister, and (2) the testimonial evidence the Church provided to show that Uzoma did not intend to profit from the three businesses he registered did not meet the Church's burden.  (CAR 4–5).  The Appeals

Office also noted that the evidence the Church submitted with the motion to reopen, including the testimonial evidence from Uzoma and his wife could have been provided earlier.  (CAR 1–6).

### 7.    The Redeemed Church and Uzoma File This Suit

The Redeemed Christian Church and Uzoma filed this action under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, seeking a declaratory judgment that the agency must grant the I-360 Petition.  The USCIS moved, and the plaintiffs cross-moved, for summary judgment.  The parties' dispute centers on whether it was arbitrary and capricious to deny the I-360 Petition.[1]

## II.    Uzoma's Standing to Challenge the Denial of His I-360 Petition

### A.    Standing

The government moves to dismiss Uzoma's challenge to the denial of his I-360 Petition for lack of standing as a visa beneficiary.  "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'"  *Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138, 1146 (2013).  "One element of the case-or-controversy requirement is that [the plaintiff] . . . must establish that [he or she has] standing to sue."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  "To have standing to sue, the plaintiff must demonstrate injury in fact that is fairly traceable to the defendant's conduct and that would be redressed by a favorable judicial decision."  *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 396 (5th Cir. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

"[A] person suing under the APA must satisfy not only Article III's standing requirements, but an additional test: The interest he asserts must be arguably within the zone of interests to be protected or regulated by the statute that he says was violated."  *Match-E-Be-Nash-She-Wish Band*

---

[1]  In their motion for summary judgment, the plaintiffs do not appear to challenge the Appeal Office's denial of their motion to reopen.  The issue is the denial of the I-360 Petition.

*of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012) (quotation marks omitted).  Zone-of-interest standing under the APA "is not meant to be especially demanding." *Id.* (quotation marks omitted).  "The test forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* (quotation marks omitted).

As "[t]he party invoking federal jurisdiction," the plaintiff "bears the burden of establishing [standing]." *Lujan*, 504 U.S. at 561.  The plaintiff must meet this burden "with the manner and degree of evidence required at the successive stages of the litigation." *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009) (quotation marks omitted).  "When the defendant moves for summary judgment because of lack of standing, . . . the plaintiff must submit affidavits and comparable evidence that indicate that a genuine issue of fact exists on the standing issue." *Assoc. of Cmty. Org. for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999) (quotation marks omitted).

### B.    Discussion

The federal regulations implementing the Immigration and Nationality Act define an "affected party" as "the person or entity with legal standing in a proceeding.  It does not include the beneficiary of a visa petition."  8 C.F.R. § 103.3(a)(1)(iii)(B).  The government argues that this regulation strips a visa beneficiary like Uzoma of standing to sue the USCIS to challenge its denial of an I-360 Petition.  Instead, only the visa petitioner has standing.

The court recently addressed the issue of a beneficiary's standing to challenge the denial of an I-360 Petition in *Khalid v. DHS*, No. 4:12-cv-3492, 2014 WL 793078 (S.D. Tex. Feb. 25, 2014). In that case, the court held that a religious employee's interest in coming to or remaining in the

United States was only tangentially related to Congress's purpose in passing the statute.  *Id.* at *8.

"The language of the statute and the cap on the number of special-immigrant visas, added to the

INA's overall goal of protecting the American labor force, does not show a Congressional concern

to further the interests of religious-worker aliens who seek to come to or remain in the Untied

States."  *Id.* at *9.  The same reasoning applies here.  The Immigration and Nationality Act sections

at issue do not protect Uzoma as the beneficiary of an I-360 Petition filed on his behalf.  Uzoma's

claims challenging the I-360 Petition denial are dismissed for lack of standing.

## III.      The Motions for Summary Judgment

### A.      The Applicable Legal Standards

#### 1.      Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Trent v. Wade*,

776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material

fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving

party.'"  *Nola Spice Designs, LLC v. Haydel Enters., Inc.*,783 F.3d 527, 536 (5th Cir. 2015) (quoting

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those

portions of [the record] which it believes demonstrate the absence of a genuine issue of material

fact.'"  *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to

the absence of evidence and thereby shift to the non-movant the burden of demonstrating by

competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

When the parties cross-move for summary judgment, the court must review "each motion

independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010) (alteration omitted) (quotation marks omitted).

## 2.    Review of Agency Determinations Under the Administrative Procedure Act

"[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "The entire case on review is a question of law." *Id.* (quotation marks omitted). "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985)). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.*

Under the Act, agency action may be held unlawful and set aside only if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The arbitrary and capricious standard is highly deferential." *Knapp v. Dep't of Agric.*, 796 F.3d 445, 453 (5th Cir. 2015) (quotation marks omitted). "Arbitrary and capricious review focuses on whether an agency articulated a rational connection between the facts found and the decision made . . . ." *Id.* (quotation marks omitted). Indeed, agency action is arbitrary and capricious "only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir.1993)

(quotation marks omitted). "The agency decision need only have a rational basis, and it does not have to be a decision which the court would have made." *Id.* In reviewing a challenge to the agency's decision, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Luminant Generation Co., LLC v. EPA*, 714 F.3d 841, 850 (5th Cir. 2013) (alteration omitted) (quotation marks omitted).

"A denial by [the USCIS] of an application for a visa may be reversed only if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989) (citing 5 U.S.C. § 706(2)(a)). "It is well settled that the applicant for a visa bears the burden of establishing eligibility." *Id.* While the district court's role is to ensure that the USCIS engaged in "reasoned decision-making," the agency is "entitled to considerable deference in its interpretation of the governing statute." *Id.* (internal citations omitted).

## B.    Discussion

The Redeemed Christian Church argues that the USCIS arbitrarily and capriciously concluded that the Church failed to show that Uzoma entered the United States solely to be a minister, and did not have any secular employment. To obtain a religious-vocation visa for a beneficiary, a petitioner must establish that the beneficiary came to the United States to work full-time in a compensated position in the vocation of a minister of a bona-fide religious denomination, and not "in secular employment." 8 C.F.R. §§ 204.5(m)(2)(i), 204.5(m)(5), 204.5(m)(7)(xi). The petitioner must provide reliable evidence supporting the visa application. "[I]t is incumbent upon the petitioner to resolve [any] inconsistencies by independent objective evidence. Attempts to explain or reconcile [any] conflicting accounts, absent competent objective evidence pointing to

where the truth, in fact, lies, will not suffice." *In re Ho*, 19 I & N Dec. 582, 591 (BIA 1988).

The Appeals Office found that the Redeemed Church did not meet its burden of proving, through documentary evidence, that Uzoma did not intend to profit when he registered Heph Technology Services, Cute Apparel, and Unicorn Billing Services, and when he bought 16 Dell computers and sold them to a friend in Nigeria.  The Director initially denied the I-360 Petition.  The Appeals Office rejected the basis for the denial but remanded to the Director to resolve "an issue regarding the beneficiary's secular activities."  (CAR 153).  According to the Appeals Office, the Redeemed Church had not submitted evidence supporting its claim that Uzoma's involvement with Heph Technology Services was not secular employment.  The Appeals Office instructed the Director to "provide the petitioner an opportunity to submit first-hand documentation (such as invoices and bank documents) to show how much the beneficiary spent to order and ship the computers, and how much he received from his unidentified 'friend in Nigeria.'"  (CAR 154).  The Appeals Office noted that if Uzoma "received anything beyond his own expenses in purchasing and shipping the computers, then [it] would be very difficult to consider the surplus as anything other than business income."  (*Id.*).  The Office emphasized that the Redeemed Church had to "submit documentary evidence that [would] persuasively establish that Heph Technology Services was not, and was never intended to be, a profit-generating enterprise."  (*Id.*).  The Appeals Office's decision made clear that "testimonial" evidence would not be enough.  (*Id.*).

On remand, the Redeemed Church presented documents, including the invoices and bank documents the Appeals Office had referred to.  The documents showed that Heph Technology Services lost money on the computer transaction.  The commercial invoice the Church submitted billing Okoronkwo for the computers listed a higher invoice amount than Heph Technology Services

22

paid.  The invoice stated that the amount billed to Okoronkwo included "Shipping & Handling to Lagos."  The Church explained that shipping and export fees explained difference between the amount invoiced to Okoronkwo and the price Heph Technology paid.  The Church also submitted an affidavit from Okoronkwo stating that he had asked Uzoma to loan him money as a friend so that he could purchase the computers, but Uzoma refused.  Instead, Sekumade paid for the computers on Okoronkwo's behalf.  Sekumade's affidavit was consistent, stating that he provided all the money for the computers, that Uzoma received no benefit from the transaction, and that Uzoma's only job was as a pastor.  (CAR 134–38).

The Director denied the Petition again in October 2010, on the basis that the evidence showed that Uzoma was involved in secular activity.  "[A]lthough the business transaction resulted in a loss, the intent of the transaction, as evidenced by the billing statement, was to obtain a profit."  (CAR 104).  The Director also found that Unicorn Billing Services and Cute Apparel raised suspicions that Uzoma had engaged in secular employment because no income from the businesses was included on Uzoma's tax returns.  (*Id.*).

The Appeals Office affirmed the denial, finding that Uzoma had engaged in secular business activities.  The Appeals Office acknowledged the evidence showing that Uzoma had not profited from the computer sale but agreed that the evidence did not show a lack of intent to profit.  (CAR 80).  The Appeals Office criticized the "majority" of the evidence the Redeemed Church submitted on remand as testimonial rather than documentary.  The Appeals Office noted that its remand order stated that testimonial claims by the beneficiary and his friend from Nigeria would not suffice to meet the Church's burden.  At the same time, however, the Appeals Office made clear that its decision rested in part on the fact that the Church had not submitted a statement from Uzoma or his

wife "to explain their activities."   (CAR 81).   Although the Appeals Office acknowledged Sekumade's affidavit, it did not analyze it or discuss why it was not credible.   The Office did not acknowledge Okoronkwo's affidavit at all.

The record suggests an arbitrary and capricious approach to the evidence the Church submitted.   The Appeals Office's remand order had admonished the Church that mere testimonial statements from Uzoma or his Nigerian friend would not suffice, but it failed to analyze whether the affidavits from Okoronkwo or Sekumade, in combination with documentary evidence, was enough to carry the Church's burden.   And despite its previous instructions, the Appeals Office faulted the Church for not submitting testimonial statements from Uzoma or his wife.   The Appeals Office appears to have changed its position again in later denying the motion to reopen, when the Church had submitted testimonial statements from Uzoma and his wife.   The Appeals Office reasoned that this evidence should have been submitted earlier, despite its earlier warning about such evidence.

It is unclear why the Appeals Office apparently refused to consider the testimonial evidence that the Church submitted.   The Office is not required to accept testimonial evidence as true, even if it is uncontradicted, if the agency finds it lacking in credibility.   *See Soltane v. U.S. Dep't of Justice*, 381 F.3d 143, 151–52 (3d Cir. 2004) (Alito, J.) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1254 (11th Cir. 1983); *NLRB v. Walton Mfg. Co.*, 369 U.S. 404, 408 (1962)).   But the Appeals Office may not reject or disregard evidence simply because it is testimonial.   *Id.*   The case the Appeals Office cited dealt with 8 C.F.R. § 204.6(j)(3), a regulation that explicitly requires certain forms of documentary evidence.   *See In re Soffici*, 22 I & N Dec. 158, 160 (BIA 1998).[2]   The statute

---

[2]   Similarly, in *In re Treasure Craft of Cal.*, 14 I & N Dec. 190 (Reg. Comm. 1972), the case that *Soffici* cited, stronger, documentary proof was needed because the testimonial evidence the petitioner submitted directly contradicted documentary evidence in the record.

and regulations at issue here, including 8 U.S.C. § 1101(a)(27)(C) and 8 C.F.R. §§ 204.5(m)(2)(i), (5), and (7)(xi), do not require the evidence to be documents rather than affidavits, or require a certain form of evidence not submitted here.

In the absence of an explicit requirement to submit certain kinds of documentary evidence, "an agency is generally under at least a minimal obligation to provide adequate reasons explaining why it has rejected uncontradicted evidence," including testimonial evidence. *Soltane*, 381 F.3d at 151 (citing Richard J. Pierce, Jr., 2 ADMINISTRATIVE LAW TREATISE § 11.2 at 791 (2002)). While the agency can reject testimonial evidence it finds not credible or contradicted by documentary evidence in the administrative record, *see id.* at 151–52; *In re Treasure Craft of Cal.*, 14 I & N Dec. 190 (Reg. Comm. 1972), the Appeals Office did not make either finding here, explicitly or implicitly. The record does not show that the testimony submitted was internally inconsistent or contradictory so as to justify rejecting or ignoring it and instead relying only on the documents without the affidavits.

There were inconsistencies between some of the documents the Church submitted earlier and some of the Church's more recent explanations, including about when Heph Technology Services was first registered, whose idea it was to register the name, and why Uzoma's wife had rented office space for Cute Apparel and then ended the rental. But the documents and the affidavits were both internally consistent about these and other facts and uncontradicted by other record evidence. The receipts, commercial invoice, bank statements, wire transfer requests, tax returns, and Harris County clerk records were all consistent with the testimonial evidence. The evidence included affidavits from Sekumade and Okoronkwo that:

- Heph Technology Services conducted a single transaction;

- The transaction was Okoronkwo's idea;

- Sekumade or Uzoma registered a business name—Heph Technology Services;

- Uzoma never intended to make money from his involvement with Heph Technology Services, but rather to accommodate Okoronkwo's one-time request for computers;

- Sekumade paid for the computers, not Uzoma; and

- Heph Technology Services lost money on the transaction, and Uzoma received no money from the transaction.

The USCIS cites cases holding that discrepancies in the record can support a finding that the beneficiary did not work solely as a minister. But in those cases, the discrepancies clearly showed secular employment, not merely a limited and transient role in facilitating a transaction for a friend or spouse. And those cases did not include consistent documentary and testimonial evidence supporting the petitioner's claims.

In *Hawaii Saeronam Presbyterian Church v. Ziglar*, 243 F. App'x 224, 226 (9th Cir. 2007) (per curiam), the petitioning church had failed to submit required forms of evidence showing that the beneficiary worked full-time as a minister, and the financial statements it did submit were inconsistent. In *Eastern Orthodox Brotherhood of Kellion of Holy Transfiguration v. Napolitano*, No. 1:13-cv-478, 2014 WL 136202, at **3–4 (N.D. Ohio Jan. 14, 2014), the petitioner itself submitted a letter stating that the beneficiary had worked "odd jobs" to make money, precluding a finding that he had worked solely as a minister. In *In re Mirza*, A75-935-229, 2006 WL 3203661, at *1 (BIA Aug. 31, 2006), *aff'd sub nom. Mirza v. Mukasey*, 268 F. App'x 122 (2d Cir. 2008) (per curiam), the beneficiary admitted that he had worked part-time as a cab driver in addition to working as a minister. In *Ukranian Autocephalous Orthodox Church v. Chertoff*, 630 F. Supp. 2d 779 (E.D. Mich. 2009), the petitioning church gave contradictory information about the beneficiary's job and submitted evidence showing that he had permanent residence 200 miles away from the city where

26

he supposedly worked full-time as a minister.  The evidence and inconsistent information precluded finding that he was working as claimed.  *Id.* at 788–89.  And in *Ogundipe v. Mukasey*, 541 F.3d 257, 261 (4th Cir. 2008), undisputed documentary evidence showed that the beneficiary had worked in "sales" and as an "assistant manager" when the petitioner claimed he was working solely as a minister.  None of these cases held that an agency could disregard testimonial evidence without making a credibility finding, to conclude that the documentary evidence, considered without affidavits or statements explaining them, failed to show that the beneficiary worked solely as a minister.

The refusal to consider testimonial evidence is particularly troubling here because the Appeals Office first instructed the Church that testimonial evidence would not "suffice" to meet its burden; later apparently disregarded the testimonial evidence that the Church did submit without finding it lacking in credibility; and after that faulted the Church for failing to submit testimonial evidence earlier.  The record also shows that the evidence of secular employment here was far less than in the cases the USCIS cites.

"If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam). When a court remands to an agency to clarify the reasons supporting its decision, the case law suggests that remand is appropriate without vacating the agency's order. *U.S. Postal Serv. v. Postal Regulatory Comm'n*, 785 F.3d 740, 756 (D.C. Cir. 2015); *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1086 (D.C. Cir. 2001) (remanding without vacating when the court is "unsure of the

grounds the agency asserts to defend its action (and, perhaps, where [it] perceive[s] that a ground poorly articulated might be sufficient to sustain the action)").

On remand, the agency should clarify whether it considered the testimonial evidence the Redeemed Church submitted in response to the Appeal Office's remand order.  If not, the agency should reevaluate its conclusion that Uzoma intended to profit from the computer sale in light of that evidence.  Some questions are whether the Sekumade and Okoronkwo affidavits are credible, and whether the credible testimonial and documentary evidence together meet the Church's burden. Neither was addressed, contributing to this court's finding of arbitrary and capricious agency action.

## IV.  Conclusion

The court recognizes that the USCIS strongly opposes a remand.  The USCIS's brief on reconsideration was helpful, detailed, and thorough.  But, as discussed, the current administrative record in this case is not as clear as the USCIS insists.  Remand will serve the narrow but important purpose of ensuring that the agency's seemingly inconsistent treatment of the testimonial evidence is adequately explained and supported by findings of fact, which will then allow for meaningful judicial review of the challenged agency action.  *See SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) ("We are not suggesting that the [agency] must justify its exercise of administrative discretion in any particular manner or with artistic refinement.  We are not sticking in the bark of words.  We merely hold that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained.").  The court expresses no opinion on whether the Redeemed Christian Church is ultimately entitled to the relief it seeks.

Uzoma's claims are dismissed for lack of standing.  The USCIS's motion for summary judgment, (Docket Entry No. 50), is denied. The Redeemed Christian Church's motion for summary judgment, (Docket Entry No. 52), is granted, and the case is remanded to the USCIS for additional

28

review, including of the testimonial evidence the Redeemed Christian Church has submitted.

SIGNED on May 26, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge